**GREGORY ENGLISH,**

  **Plaintiff.**

  **v.**

**DISTRICT OF COLUMBIA, et al.,**

  **Defendants.**

**Civil Action No.  10-1512 (JDB)**

## <u>MEMORANDUM OPINION</u>

Gregory English is a patient involuntarily committed at Saint Elizabeths, a public psychiatric institution.  English alleges due process violations, as well as an array of state and common law claims that all stem from the hospital's allegedly unlawful withdrawal of $2150.00 from his patient account and its application toward the costs of his treatment.  The claims are brought against the District of Columbia and several individuals, all named in their official capacities -- Adrian Fenty, as mayor of D.C., Stephen Baron, Director of the D.C. Department of Mental Health ("DMH") , Michael Neff, Chief of Administrative Operations of DMH, Anne Weiss, Deputy Director of the Office of Accountability of DMH, Joyce Jeter, Fiscal Officer for DMH, Dr. Patrick Canavan, CEO of Saint Elizabeths Hospital, Anthea Seymour, COO  of Saint Elizabeths Hospital, and Walter Valliere, Chief Administrative Officer of Saint Elizabeths Hospital ("Defendants").  Defendants have moved to dismiss all the claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons explained below, the motion to dismiss is granted.

## BACKGROUND

English alleges the following facts. Saint Elizabeths is a public psychiatric institution run by the District of Columbia's Department of Mental Health ("DMH"). Compl. ¶ 1. The hospital was established in 1855 as a federal institution, but control over it was transferred to the District of Columbia in 1987. Id. ¶ 23. English was adjudged not guilty by reason of insanity, and has been involuntarily committed to Saint Elizabeths since 1982. Id. ¶¶ 11, 23. Patients who were housed in maximum security wards, which included English, were not permitted to hold personal funds. Instead, Saint Elizabeths established and managed accounts in order to allow patients to access funds for their personal use. English had maintained such a patient account since at least 1988. Patients could access the funds in their accounts by making a request to their assigned social worker, although the number and frequency of such requests, as well as the maximum allowable withdrawal amounts, were restricted by the hospital. Id. ¶¶ 19-20 & 22. For instance, English claims that patients were only allowed to withdraw funds once every two weeks in increments of $100 for on-ward use, $300 for off-site group visits, and $500 to be sent to a relative. He further alleges that the fulfillment of fund requests could take up to three weeks. Id. ¶ 22. Moreover, English states that no social worker had been located on his ward for at least a month. Id.

Sometime in 2004, English participated in "Stamps for a Living," an occupational therapy program run by Saint Elizabeths. As part of that program, English removed stamps from envelopes received by or donated to the hospital for later sale or distribution to collectors, and earned wages for his work. Id. ¶ 18. English earned around $6.55 an hour in 2008 and 2009. Id. ¶ 19. He deposited these wages into his patient account. By July 28, 2009, his account

contained $2250.00.  Id. ¶ 19.  English alleges that, at all times, he believed that he was the only one who could remove funds from his account, and was never told that Saint Elizabeths could remove his funds without his permission. Id. ¶ 28.

On July 14, 2009, English signed and dated an Administrative Consent Form authorizing Saint Elizabeths to receive insurance benefits otherwise payable to English, and allowing Saint Elizabeths to apply for benefits on English's behalf.  Id. ¶ 30 & Ex. 2.  English alleges that the Administrative Consent Form failed to state that Saint Elizabeths was authorized to withdraw funds from English's patient account "or provide information that [English] is otherwise responsible for the costs associated with his care" Id.[1]  On July 28, 2009, English received an invoice from Saint Elizabeths' billing department, which assessed a charge of ten dollars ($10) per day against English for the costs of his care from July 1, 2008 to January 31, 2009.  Compl.¶ 29 & Ex. 1.  The invoice stated that English had a "financial obligation to Saint Elizabeths hospital" for $2150.00, and that, if no payment was made within seven days, the hospital "reserve[d] the right to apply any of [his] funds held by the hospital in full or partial satisfaction of this debt."  Id. ¶¶ 29, 31.  The invoice also stated "we have suspended additional charges . . . so as to maintain a minimum of $100.00 in the patient fund account for your benefit." Id. Ex. 1.

English alleges that this was the first invoice he had received during his entire commitment at Saint Elizabeths.  Id. ¶ 32.  The invoice provided a phone number that English could call for any questions he had with respect to the bill.  Id. Ex. 1. It also stated that English

---

[1] However, the Administrative Consent Form, attached to English's complaint, does state that English is responsible for the costs associated with his care. Compl. Ex. 2 ("I understand that I am personally responsible to the Hospital . . . for all charges not paid in full by insurance coverage or in the absence of insurance coverage, the full balance.").

could submit a written appeal within seven days of receiving the bill, which English did by mailing a letter to the address provided two days after he received the bill. He did not receive a response. Id. ¶ 33. Subsequently, in early August 2009, Saint Elizabeths removed $2150.00 from English's account. English alleges that he was informed of this removal by his social worker. Id. ¶ 34.

English then challenged the removal of the funds through DMH's grievance process. On September 14, 2009, he filed a Form C -- a Consumer's Form for Filing a Grievance. He described his grievance as relating to "get[ting] my money back & keeping it." Id. ¶ 35 & Ex. 3. On September 29, 2009, DMH responded through a Form D, which attached a September 15, 2009 letter from Walter Valliere, Chief Administrative Officer of DMH, determining that Saint Elizabeths properly took the funds to "extinguish [English's] debt," and stating that "D.C. law specifically requires that [English] pay for the costs of [his] care at Saint Elizabeths." Id. ¶ 36 & Ex. 4. English then requested an external hearing before an independent reviewer pursuant to D.C. Code § 7-1231.12(b) and D.C. Mun. Regs. 22A § 300 et. seq. That hearing was held on November 19, 2009, and included testimony by English, Valliere, and other witnesses, though English's social worker, who was listed as a "required attendee," did not appear. Id. ¶¶ 37-40. English testified that he did not read the Administrative Consent Form before signing it, but that his understanding -- based on statements made by hospital staff -- was that the form discussed the hospital's right to apply for Medicaid benefits on his behalf. Id. ¶ 47 & Ex. 5.

On November 27, 2009, the independent reviewer issued a non-binding Advisory Opinion concluding that English's grievance had some merit and that the hospital lacked clear policies and guidelines in administering the program of charging patients for their care and

recouping such amounts from their patient accounts. The reviewer recommended that English's funds be put in escrow pending judicial review. Id. ¶¶ 41-44. English did not receive a copy of the Advisory Opinion until January 6, 2010, which DMH claimed was "due to a serious mix-up with the delivery." Id. ¶ 41. On January 13, 2010, English responded to the Advisory Opinion, asking DMH either to return the funds to English's account or, alternatively, to adopt the recommendation of the independent reviewer. Id. ¶¶ 45-46; id. Ex. 6. DMH did not respond. Id. ¶ 46.[2]

On January 29, 2010, English filed a Notice of Claim pursuant to D.C. Code § 12-309 with the District of Columbia's Office of Risk Management stating English's intent to file a claim against the District and DMH. Id. ¶ 53. English then filed his complaint in this Court on September 8, 2010 against the District of Columbia and several individuals, all named in their official capacities -- Adrian Fenty, as mayor of D.C., Stephen Baron, Director of DMH , Michael Neff, Chief of Administrative Operations of DMH, Anne Weiss, Deputy Director of the Office of Accountability of DMH, Joyce Jeter, Fiscal Officer for DMH, Dr. Patrick Canavan, CEO of Saint Elizabeths Hospital, Anthea Seymour, COO of Saint Elizabeths Hospital, and Walter Valliere, Chief Administrative Officer of Saint Elizabeths Hospital.

The complaint asserts nine counts against the defendants: (1) deprivation of English's right to property without due process in violation of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments; (2) breach of fiduciary duty; (3) violation of the trust or bailment relationship; (4) violation of the District of Columbia Administrative Procedure Act ("DCAPA"),

---

[2] Subsequent to the filing of English's complaint in this Court, DMH responded by denying English's grievance. See Pl.'s Opp'n. at 16.

D.C. Code § 2-510; (5) violation of D.C. debtor laws; (6) unlawful pre-judgment garnishment of wages; (7) intentional infliction of emotional distress; (8) conversion; and (9) declaratory relief pursuant to 28 U.S.C. § 2201. Defendants subsequently moved to dismiss all counts and English has opposed the motion. On June 30, 2011, the Court held oral argument on the pending motion to dismiss.

## STANDARD OF REVIEW

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and

then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 21 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (explaining that the court has "never accepted legal conclusions cast in the form of factual allegations").

## DISCUSSION

In considering a motion to dismiss, the Court considers "the facts alleged in the complaint, any documents either attached to or incorporated by reference in the complaint, matters of which the court may take judicial notice, and matters of public record. Felder v.

Johanns, 595 F. Supp. 2d 46, 58-59 (D.D.C. 2009) (citing EEOC v. St. Francis Xavier Parochial

Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  Defendants urge this Court to dismiss all of English's

claims, but the gravamen of the parties' arguments focus on English's claim that defendants

violated his constitutional rights under 42 U.S.C. § 1983 -- specifically, English asserts that

defendants unlawfully withdrew $2150.00 from his account, depriving him of this property

without due process of law in violation of the Fifth and Fourteenth Amendments[3] and 42 U.S.C.

§ 1983.  Compl. ¶¶ 55-61.  He alleges that none of the policies or procedures in place provided

him with adequate notice or an adequate opportunity to respond.  Id. ¶ 57.  In other words,

English challenges the sufficiency of the notice, as well as the adequacy of the process, he

received, claiming that neither the pre-deprivation notice nor the grievance procedures satisfied

the requirements of procedural due process.  In defendants' view, English's due process claim

should be dismissed because English failed to exhaust his administrative remedies; in the

alternative, defendants contend that dismissal is warranted under Federal Rule of Civil Procedure

12(b)(6) because English received constitutionally sufficient process by having adequate notice

and an opportunity to be heard regarding the withdrawn funds.  Mot. to Dismiss at 11-18.

Finally, defendants urge this Court to refrain from exercising supplemental jurisdiction over

English's common and state law claims, should this Court determine that dismissal over the

---

[3] As defendants rightfully assert, the Fourteenth Amendment does not apply to the
District of Columbia with respect to procedural due process claims.  See Mot. to Dismiss (citing
Bolling v. Sharpe, 347 U.S. 497, 498 (1954)); see also Butera v. Dist. of Columbia, 235 F.3d
637, 645 n. 7 (D.C. Cir. 2001) (describing the applicability of the Fifth Amendment to the
District of Columbia, even though due process violations are usually analyzed under the
Fourteenth Amendment); Scales v. Dist. of Columbia, 973 A.2d 722, 725 n. 1 (D.C. 2009)
(noting that the "Fourteenth Amendment does not apply to the District of Columbia.").  Hence,
plaintiffs' procedural due process claim pursuant to the Fourteenth Amendment is dismissed.

federal claims is warranted.

## I. PROCEDURAL DUE PROCESS

### A. Exhaustion

As a threshold matter, defendants argue that English's claims should be dismissed because they have not been exhausted. They claim that English "had an available pre-deprivation appeal process, but does not plead or assert that he availed himself of that process." Mot. to Dismiss at 19. Instead, defendants suggest that English only alleged that he "*attempted* to challenge the bill" through the appeals process, but did not successfully do so. Id. (emphasis added).

There is no general requirement that a plaintiff alleging a section 1983 claim must exhaust his available administrative remedies before seeking relief in federal court. See, e.g., Dist. Properties Assocs. v. Dist. of Columbia, 743 F.3d 21, 27 n. 3 (D.C. Cir. 1984) (stating that exhaustion of administrative remedies is inapplicable in § 1983 cases). However, defendants argue that an exception to this principle applies when the rights sought to be vindicated are procedural due process rights, and suggest that administrative exhaustion is required whenever procedural due process rights are at issue. See Mot to Dismiss at 18-19. In support of this contention, defendants rely on Johnson v. Dist. of Columbia, 368 F. Supp. 2d 30, 36 (D.D.C. 2005), and Hoey v. Dist. of Columbia, 540 F. Supp. 218 (D.D.C. 2008).

However, defendants' reliance on such cases is unavailing. Both Johnson and Hoey involved procedural due process claims brought by District of Columbia employees whose employment-based claims were subject to the procedures provided by the Comprehensive Merit Protection Act (CMPA), an established administrative framework employees are required to

utilize in order to seek relief.  See Johnson, 368 F. Supp. 2d at 44 ("If the CMPA provides a

remedy for such claims, then exhaustion is required."); Hoey, 540 F. Supp. 2d at 227, 229

(dismissing § 1983 claim because the CMPA provided a remedy for plaintiff's claim that he was

deprived of his constitutionally-protected property interest in his employment at the rank of

Commander without due process); see also Randolph-Sheppard Vendors of Am. v. Weinberger,

795 F.2d 90, 104 (D.C. Cir. 1986) ("[T]he policy of exhaustion 'is particularly viable where an

established scheme of decision making might be undermined by permitting circumvention of

administrative procedures.'") (citing Wallace v. Lynn, 507 F.2d 1186, 1190 (D.C. Cir. 1974)).

Here, although D.C. law does provide for a post-deprivation grievance procedure for

consumers of mental health services from providers such as Saint Elizabeths, see Pl.'s Opp'n. at

19-20, that law specifically states that the grievance process is not the exclusive means by which

consumers can obtain relief.  See D.C. Mun. Regs. § 304.3 ("Consumers are not required to

utilize the Grievance Procedure.  Consumers may pursue other legal, administrative, or informal

relief in lieu of or concurrently with filing a grievance."); see also Randolph-Sheppard, 795 F. 2d

at 104.  In any event, English's complaint states that he *did* submit a written appeal, and even

though the hospital claims to have no record of it, this allegation must be accepted as true. See

Iqbal, 129 S. Ct. at 1949 (internal citation omitted).  English also availed himself of the voluntary

grievance procedures provided for under D.C. law, as well as the external review procedures.

See Compl. ¶¶ 35, 37; D.C. Code § 7-1231.12(b); D.C. Mun. Regs. 22A § 300 et. seq.[4]

---

[4] Defendants also contend that because English could have raised his claims pursuant to
the DCAPA in state court, his failure to pursue such state remedies amounts to a failure to
exhaust.  Mot. to Dismiss at 19.  However, the Court is doubtful that the failure to seek a remedy
under the DCAPA should even be deemed an "exhaustion" requirement.  See, e.g., Cotton v.
Jackson, 216 F.3d 1328, 1331 n. 2 (11th Cir. 2000) (The "rule (that a section 1983 claim is not

Accordingly, the Court will deny defendants' motion to dismiss based on English's purported failure to exhaust his claims.

### B.     Failure to State a Claim

The Court now considers English's constitutional claim, which is predicated upon an alleged deprivation of English's property without due process of law.  In order to state a procedural due process claim, English must allege a deprivation of life, liberty, or property, without due process of law. <u>See</u> U.S. Const. amend. V.  The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (internal citation omitted); <u>see also</u> <u>Propert v. Dist. of Columbia</u>, 948 F.2d 1327, 1331 (D.C. Cir. 1991) (stating the three basic elements to a procedural due process claim as (1) a deprivation, (2) of life, liberty, or property, (3) without due process of law.   However, due process is not a concept that is "unrelated to time, place and circumstances" but instead is "flexible and calls for such procedural protections as the particular situation demands." <u>Mathews</u>, 424 U.S. at 334.

Hence, the form of notice and hearing required in a given circumstance requires a balancing of the competing public and private interests involved. <u>Propert</u>, 948 F.2d at 1332.  In assessing what kind of process is due, a court considers three factors as enumerated by the Supreme Court in <u>Mathews</u>: 1) the nature of the private interest that will be affected by the

_____

stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) . . . is not an exhaustion requirement . . . . Instead, this directive is a recognition that procedural due process violations do not even exist unless no state remedies are available."); <u>Kauth v. Hartford Ins. Co. of Illinois</u>, 852 F. 2d 951, 955 n. 8 (7th Cir. 1988) (drawing a distinction between exhaustion requirement and the reasoning that if adequate state remedies are available, a plaintiff's right to procedural due process is not violated and there are no grounds for a section 1983 action).

official action, 2) the risk of erroneous deprivation of such an interest through the procedures used, and (3) the government's interest, including any burdens that additional or alternative procedural requirements would entail. Mathews, 424 U.S. at 335. Moreover, under 42 U.S.C. § 1983, a plaintiff whose constitutional or federal rights have been violated by another acting under color of state law can seek civil and equitable remedies for such violations. See Moses v. Dist. of Columbia, 741 F. Supp. 2d 123, 126 (D.D.C. 2010) (internal citations omitted). English alleges that "[d]efendants, acting under color of state law, unilaterally withdrew $2150.00 from [English's] patient account," thereby depriving him of his property without due process of law. Compl. ¶¶ 55-61. He contends that "[n]one of the policies and procedures in place at Saint Elizabeths or DMH provided [him] with the adequate notice or adequate opportunity to respond guaranteed by the Due Process Clause of the Constitution." Id. ¶ 58.

Although the parties spend a substantial amount of time in their briefings discussing the Mathews factors, they agree that English was entitled to *some* process before the funds were taken out of his account, and that a post-deprivation (as opposed to a pre-deprivation) hearing was sufficient for due process purposes. See Tr. 18:8-10, 45:15-24. In addition, the parties do not disagree that the District was entitled to assess and recoup its costs from English for his treatment. See Pl.'s Opp'n at 22. Nevertheless, the Court considers what process English was due, and whether the process he alleges he received was constitutionally sufficient.

With respect to the first factor under Mathews, defendants acknowledge that English has a property right in the funds. See Compl. ¶ 55; Tr. 9:7, 23:25.[5] Moreover, when viewing the

_____

[5] Indeed, defendants could not seriously dispute that English has a property interest in these funds. Even in the context of cases involving prisoner trust accounts, which defendants contend are illustrative here, courts have easily found that prisoners had a property interest in

allegations in the light most favorable to English, the Court readily concludes that English has plausibly pled that he had an interest in these funds. See Compl. ¶¶ 22-23, 28. However, while English has an interest in these funds, he has not been deprived of treatment or services as a result of this deprivation -- in contrast to situations like that faced by the plaintiff in Goldberg v. Kelly, 397 U.S. 254 (1970). There, the Supreme Court concluded that a pre-termination hearing was required with respect to plaintiff's welfare payments because plaintiff depended on such benefits for subsistence. Id. at 264. English has conceded that he did not rely on these funds for subsistence. At the hearing, English's counsel stated the following:

> [English] is certainly not in a circumstance where the deprivation of the funds prevented him from some immediate need. He still got food, he still had a roof over his head, he was still receiving care at Saint Elizabeths. He did not have a deprivation that kept him from being able to travel to go to work. If you look at the earlier cases on welfare benefits and on the fact that if those were taken there wouldn't be food on the table, there wouldn't be an ability to get to a job, there wouldn't be an ability to pay rent. I agree that those things did not happen here.

Tr. 45:15-24.

Moreover, although English suggests in his opposition to defendants' motion to dismiss that he should have received a pre-deprivation evidentiary hearing, at the hearing before this Court his counsel conceded that a pre-deprivation hearing was not required. Tr. 40:21-25 ("I don't think a pre-deprivation hearing is required . . . I'm not arguing that a pre-deprivation hearing is required."). Nor could English successfully argue that he was entitled to a full-scale pre-deprivation evidentiary hearing because, as this Court already noted, the nature of the property

---

such accounts. See, e.g., Burns v. PA Dept of Corr., 544 F.3d 279, 280-81 (3d Cir. 2008); Burks v. Pate, 119 Fed. App'x 447, 450 (4th Cir. 2005); Higgins v. Beyer, 293 F.3d 683, 693 (3d Cir. 2002).

interest in this case is more analogous to that possessed by the plaintiff in <u>Mathews</u> than to the property interest in <u>Goldberg</u>.  Further, courts have indicated that a private individual's interest in maintaining the use of money prior to paying a fee, when compared to the deprivation of a job or some other kind of need-based benefit, was the kind of interest that would be "completely compensable by a post-deprivation process."  <u>See</u> <u>Benson v. Sebelius</u>, -- F. Supp. 2d ----, 2011 WL 1087254, at *8 (Mar. 24, 2011 D.D.C. 2011) (citing <u>City of Los Angeles v. David</u>, 538 U.S. 715, 717-18 (2003)).

Under the second <u>Mathews</u> factor, the risk of erroneous deprivation, defendants claim that because English had the ability to challenge the accuracy of the bill, the risk of error was minimalized; additionally, defendants argue that there is little risk of error because Saint Elizabeths was required by statute to charge English for the costs of his care. Mot. to Dismiss at 13; <u>see also</u> D.C. Code § 24-501(f)(1).[6]  English suggests that there may be some risk of erroneous deprivation, given English's mental illness and the illness of other patients at Saint Elizabeths, Pl.'s Opp'n. at 10, as well as the hospital's conduct with respect to the handling of English's attempts to protest the charges and the withdrawal of funds from his account, Pl.'s Opp'n. at 16.   But both parties agree that there is  a statutory requirement to charge patients for their treatment costs. <u>See</u> <u>id.</u> at 15 ("Here . . . the taking was a direct result of a purportedly established procedure.").  English, as previously stated, has not challenged the provision of D.C. law requiring that English be assessed the costs of his own treatment, and has not otherwise

---

[6] D.C. Code § 24-501(f)(1) states:
[W]hen an accused person is acquitted solely on the ground of insanity and ordered confined in a hospital for the mentally ill, the person and the person's estate *shall be charged* with the expense of the person's support in the hospital.  (emphasis added).

contested the District's authority, as a substantive matter, to apply English's funds towards those costs.  See Pl.'s Opp'n at 22 (stating that English does not allege a substantive due process claim).  Moreover, where an agency's decision turns on routine, standard, and unbiased information, or the implementation of an institutional policy, then a pre-deprivation hearing would not be effective in reducing the risk of an erroneous deprivation.  Benson, 2011 WL 1087524, at * 9 (citing Mathews, 424 U.S. at 343-44); see also UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of  Trustees of the Univ. of the Dist. of Columbia, 56 F.3d 1469, 1474 (D.C. Cir. 1995) (finding little risk of erroneous deprivation in not having a pre-summer hearing where a decision not to grant summer contracts to professors was made as a result of budgetary shortfalls).[7]

Finally, with respect to the third Mathews factor, defendants claim that the District's interest in compensating itself for the costs of patient care is substantial.  Mot. to Dismiss at 14.  English responds simply that any burden on the District is outweighed by the importance of according him sufficient process, but fails to explain in his complaint, his memoranda or at the hearing what benefits would be obtained by any additional process. Pl.'s Opp'n. at 16.

As courts have acknowledged, although due process does require that the Government provide notice and some kind of opportunity to be heard before final deprivation of a property interest, see Propert, 948 F. 2d at 1331 (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982)), the nature of that notice and hearing is flexible.  In considering all the Mathews

---

[7] While English states that only some patients were charged for their treatment, that Saint Elizabeths withdrew funds from only some patient accounts, and that English had not been charged in the previous years he had been a patient,  Compl. ¶¶ 28-29, 32, 42, the only relevant federal law claims he has raised are premised on his asserted right to procedural due process.

factors together, the Court agrees that English was entitled to some pre-deprivation notice, and to an opportunity to contest the seizure of his funds at some form of a post-deprivation hearing. However, the Court stops short of concluding that in balancing these factors a full blown evidentiary hearing was required. "[I]n having his 'grievance heard and redressed' . . . plaintiff is not entitled to perfect procedure or the procedures of his choice." Bagenstose v. Dist. of Columbia, 503 F. Supp. 2d 247, 257 (D.D.C. 2007). In any event, it appears that English received a hearing in which he was entitled to request documents, examine and cross-examine witnesses, and present his grievance before an independent reviewer. Accordingly, in considering the nature of the property interest, the risk of erroneous deprivation, and the government's interest weighed against English's interest, the Court concludes that a post-deprivation hearing is sufficient to satisfy constitutional due process.

English concedes that no pre-deprivation hearing was required; instead, he complains that the process he did receive was not "meaningful" process under Mathews. He attacks both the sufficiency of the notice and the meaningfulness of his opportunity to be heard with respect to the alleged deprivation. Specifically, English claims that because the notice was unclear, it was not reasonably calculated to give him actual notice that the funds would be removed from his account. He also claims that because his initial appeal was not received by the hospital, because certain documents and witnesses were not produced during his external review hearing, and because of DMH's delay in transmitting the independent reviewer's findings and the delay of DMH's own response to the external reviewer's recommendations, his opportunity to be heard was constitutionally infirm. See Compl. ¶¶ 30-33, 46-47, 57; Tr. 26:13-15.

But even taking all of English's factual allegations as true, and viewing his complaint in

the light most favorable to him, the Court concludes that English nonetheless has failed to state a procedural due process claim. While English asserts that the notice he received was inadequate to provide actual notice, he nevertheless admits that after receiving the invoice, he followed the procedures listed on it advising him that he had seven days in which to challenge the invoice, and he concedes that he did, in fact, avail himself of this appeals process -- even though Saint Elizabeths ultimately claims it did not receive his appeal. Compl. ¶¶ 35-41;[8] see, e.g., Chang v. Dist. of Columbia Dep't of Regulatory & Consumer Affairs, 604 F. Supp. 2d 37, 63 (D.D.C. 2009) (finding that "plaintiff's allegations that she acted immediately following receipt of the stop work order . . . make plain that she was in no way hampered in the appeals process"); Am. Towers, Inc. v. Williams, 146 F. Supp. 2d 27, 33 (D.D.C. 2001) (dismissing procedural due process claim because "plaintiff was offered and took advantage of [the] pre-deprivation procedure and was also advised of its right to post-deprivation hearings"). Here, the notice was "reasonably calculated" to make English aware that he owed money, and that this money would be taken from his account.

Moreover, English availed himself of the post-deprivation procedures that were available. See Chang, 604 F. Supp. 2d at 63-64 (dismissing procedural due process claim because "[t]he

---

[8]  English informed the External Reviewer that he understood the Administrative Consent Form as consenting to Saint Elizabeths' application for certain benefits on his behalf -- not the removal of his funds from his account. Compl. Ex. 5 at 6. But contrary to English's allegation that the consent form failed to explain that he was responsible for the costs of his care, the form itself plainly states as much. Compl. Ex. 2 ("I understand that I am personally responsible to the Hospital . . . for all charges not paid in full by insurance coverage or in the absence of insurance coverage, the full balance."). But even accepting English's allegation as true, and disregarding the effect of the Administrative Consent Form, English agrees that he received the invoice notifying him both of the intent to remove funds from his account within seven days and of his right to challenge the invoice. Compl. ¶¶ 31-34.

allegations in plaintiff's complaint show that she received notice . . . and the opportunity to be heard through a multi-level appeals process").  In Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 413, 422 (3d Cir. 2000), the court found that post-deprivation hearings were constitutionally sufficient where inmates were assessed a $10 per day fee for housing costs incurred while incarcerated.[9]  Officials had confiscated half the funds Tillman had in his wallet, as well as half the funds that were sent to him to pay for the assessments; the remainder of his debt was then turned over to a collection agency after his release from prison. Id. at 413. The Third Circuit concluded that the plaintiff had an adequate post-deprivation remedy in the grievance program offered, and that this satisfied due process.  Id. at 422.  Finding no procedural due process violation, the Tillman court relied upon the fact that the assessments and removal of funds involved routine matters of accounting, with a low risk of error, that any errors could be corrected through the grievance program, and that the plaintiff had received adequate notice of both the grievance program and the program to recover costs, which meant that the process afforded passed constitutional muster. Id. at 422.

Similarly here, English alleges that he availed himself of the grievance program.  Compl. ¶ 35 ("Mr. English challenged the taking of his funds through DMH's grievance process.").  He alleges that he "described his grievance as relating to this 'patient account' and requested to 'get my money back & keeping [sic] it." Id.  He then received a response two weeks later from the

_____

[9]  The parties dispute the utility of cases that discuss the due process rights of prisoners with respect to their trust accounts.  There appear to be no cases in this jurisdiction and the parties have cited to none (and conceded as much during the hearing before this Court) dealing with prisoner trust accounts.  Such cases also consider the state's penological interests in evaluating claims brought by prisoners.  Hence, they are neither binding nor persuasive authority, although this Court has considered the facts and analysis of such cases and discussed them to the extent that they are relevant.

Chief Administrative Officer of DMH.  Id. ¶ 36.   Moreover, he requested and received an

external review where he was able to interview and cross-examine witnesses, introduce and

examine evidence, and receive a written opinion --  albeit, a non-binding one.  Id. ¶ 37-41.

Although English claims that DMH failed to submit certain documents for review, and failed to

respond to both the initial appeal and the external reviewer's recommendations in a timely

manner, courts have found that an agency's mere delay or failure to follow its own procedures

does not amount to an automatic violation of constitutional due process. See Medina v. Dist. of

Columbia, 517 F. Supp. 2d 272, 284-85 (D.D.C. 2007); Rason v. Nicholson, 562 F. Supp. 2d

153, 155-56 (D.D.C. 2008) (rejecting plaintiff's argument that defendants failed to follow "the

letter of the law in notifying him prior to the offset" because plaintiff admitted and the record

showed that he was informed of his right to pursue a post-deprivation remedy); AFGE, Local

2741 v. Dist. of Columbia, 689 F. Supp. 2d 30, 35-36 (D.D.C. 2009) ("Even assuming the

District's actions have run awry of the . . . statutes, however, such violations do not amount to a

constitutional violation."); AFGE, AFL-CIO, Local 446 v. Nicholson, 475 F.3d 341, 353 (D.C.

Cir. 2007) ("A mere violation of law does not give rise to a due process claim.").[10]

Hence, English has not plausibly stated a procedural due process claim, since his own

factual allegations confirm that he received all the process he was due.[11]  English alleges that he

---

[10]  Process for process sake is not enough.  See, e.g., Olim v. Wakinekona, 461 U.S. 238,
250 (1983) ("Process is not an end in itself.") Seal v. Morgan, 229 F.3d 567, 573 (6th Cir. 2000)
("There is no abstract federal constitutional right to process for process's sake").

[11]  This case is distinguishable from the situation in Aref v. Holder, 774 F. Supp. 2d. 147,
166-67 (D.D.C. 2011), where the plaintiffs were found to have adequately alleged a high risk that
the procedures used by defendants to place plaintiffs in restrictive confinement would result in
erroneous deprivation.  In Aref, the complaint plausibly alleged that the notices were so generic
that they provided "no notice at all" and that the opportunity to be heard was illusory because

received the invoice and attempted to appeal pursuant to the instructions contained therein, and

that he utilized several post-deprivation procedures to challenge the taking of his funds. The

Court concludes that the pre-deprivation notice English received provided him with sufficient

information by which to know the basis on which the funds were being removed, and how to

challenge such removal; moreover, he also received the opportunity to be heard in a meaningful

time and a meaningful manner. See Am. Towers, Inc. v. Williams, 146 F. Supp. 2d 27, 33

(D.D.C. 2001) ("Because plaintiff was offered and took advantage of this pre-deprivation

procedure and was also advised of its right to post-deprivation hearings . . . the Court cannot find

that defendants violated plaintiff's right to procedural due process.").

   In addition, English has not plausibly alleged that the state remedies afforded to him

either pursuant to the DCAPA or under the voluntary grievance procedures pursuant to D.C.

Code § 7-1231.12(b) and D.C. Mun. Regs. 22A § 300 et. seq., were, on their face, deficient or

otherwise inadequate to remedy his claim; indeed, he acknowledged that he *could have sought*

relief pursuant to the DCAPA, but that he attempted to seek relief on his constitutional claim in a

federal forum instead. Tr. 39:11-13; see also Medina, 517 F. Supp. 2d at 285 ("Plaintiff still has

avenues of relief open to him in the D.C. Court of Appeals through a . . . DCAPA proceeding.

These procedures afforded plaintiff all the process he was due under the Due Process Clause of

the Fifth Amendment . . . . Plaintiff's choice not to pursue these matters in a D.C. court means

plaintiff cannot support a claim for a violation of procedural due process.");[12] Alvin v. Suzuki,

_____

there were merely internal reviews and because a prison official had told plaintiff that, despite the
reviews, plaintiff would serve the rest of his sentence in the more restrictive unit. Id.

   [12] The court in Medina reasoned that because the plaintiff failed to utilize all the state
procedures available to him in that he never pursued an action in state court -- such as a writ of

227 F. 3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.").   Of course, there may be instances where a plaintiff could plausibly plead a violation of a constitutional or federal right under section 1983 that could also be considered a cognizable DCAPA claim.  See Lightfoot v. Dist. of Columbia, 448 F.3d 392, 399 (D.C. Cir. 2006).  But here the Court has concluded that English has failed to state a claim that he received constitutionally insufficient process, and he has not plausibly alleged that he had no relief available under the existing procedures provided by state law.

The Court is certainly mindful of and sympathetic to English's circumstances.  To be sure, Saint Elizabeths' missteps and failure to respond to English's grievance in a more timely manner exacerbated the situation.  And while the notice English received was constitutionally sufficient, it certainly could have been clearer, and Saint Elizabeths could have provided for a longer period for English to respond than the seven days afforded him.  However, "[a]lthough the procedure provided was not as extensive as plaintiff would have liked," due process only requires that English receive sufficient notice and an opportunity to be heard at a meaningful time and manner.  See Am. Towers Inc., 146 F. Supp. 2d at 33.[13]  English has not alleged that he had insufficient time to challenge the invoice (indeed, he alleges he mailed in his appeal two days after receiving

---

mandamus or a DCAPA claim -- his claim failed under a procedural due process analysis.  See 517 F. Supp. 2d at 282 n. 7.

[13] This is so even bearing in mind the circumstances or characteristics of a patient such as English.  See, e.g., Gray Panthers v. Schweiker, 652 F.2d 146, 165-66 (D.C. Cir. 1980), as modified on reh'g, (D.C. Cir. 1981) (commenting that due process must be considered in the context of the entire dispute resolution process, and with reference to the characteristics of the group who have to use it).

it), or that the post-deprivation grievance procedures either before the external reviewer or pursuant to the DCAPA were insufficient to redress his complaint against the hospital. His conduct belies his allegations that he was deprived of notice and an opportunity to challenge the taking of his funds. See Kowal, 16 F.3d at 1276 ("[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."). And, in any event, the Court rejects English's legal, as opposed to factual, assertions that the process he received was inadequate or meaningless. See Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted) (stating that a Court does not accept "a legal conclusion couched as a factual allegation"); see also Aktieselskabet AF 21. November 21, 525 F.3d at 17 n.4 (explaining that the court has "never accepted legal conclusions cast in the form of factual allegations"). For all these reasons, the Court will grant defendants' motion to dismiss count one of English's complaint alleging violations of procedural due process.[14]

## II. DECLARATORY RELIEF

English also brings an action for declaratory relief pursuant to the Declaratory Judgment

---

[14] Defendants briefly argue in their Reply that English lacks standing to assert his claims. Reply at 3-5. English has alleged that the District deprived him of his property interest in the funds withdrawn from his patient account without due process of law. This is a sufficient personal injury for standing purposes. In any event, courts applying the "standing framework" to procedural due process claims have accorded some flexibility to such claims. See, e.g., McManus v. Dist. of Columbia, 530 F. Supp. 2d 46, 73 n. 24 (D.D.C. 2007) (citing Carey v. Piphus, 435 U.S. 247, 266 (1978) (noting that failure to indicate specific injuries does not mean that a plaintiff lacks standing to assert a procedural due process claim)); see also Electric Power Supply Ass'n v. F.E.R.C., 391 F.3d 1255, 1262 (D.C. Cir. 2004) ("The person . . . accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.") (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 575 n. 7 (1992)); Moreau v. F.E.R.C., 982 F.2d 556, 566 (D.C. Cir. 1993).

Act, 28 U.S.C. § 2201.  He seeks a declaration "adjudging null and void any policies, procedures, practices, or acts by which Saint Elizabeths patient accounts are depleted without notice and a hearing."  Compl. ¶ 113.

To issue declaratory relief, the court must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Gibson v. Liberty Mut. Group, Inc., -- F. Supp. 2d ----, 2011 WL 1418196, at * 3 (D.D.C. Apr. 21, 2011) (citing Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).  "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C. § 2201(a).  The Declaratory Judgment Act gives the district courts "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995); see also Larry Flynt & L.F.P., Inc. v. Rumsfeld, 355 F.3d 697, 701, 705 (D.C. Cir. 2004).  "[T]he propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power."  Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952).

Because the Court has concluded that English has failed to state a due process claim, the Court finds that he is not entitled to declaratory relief for this claim.  See Hatfill v. Ashcroft, 402 F. Supp. 2d 104, 121 (D.D.C. 2005) ("Having concluded that [plaintiff] has failed to state claims

upon which relief can be granted, he is not entitled to any relief - including injunctive and declaratory - on these claims.").  In any event, although English has raised the possibility that Saint Elizabeths could seize funds from his patient account in the future and apply them to his treatment costs, English has not plausibly stated a claim that his procedural due process rights are imminently endangered.  See Curry v. Bank of Am. Loans Servicing, Civ. Action No. 10-1651, --- F. Supp. 2d ----, 2011 WL 3489306, at * 4 (D.D.C. Aug. 10, 2011) ("Courts may not make wide-ranging declarations about the relative rights of parties; instead, 'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'") (citing Federal Exp. Corp. v. Air Lane Pilots Ass'n, 67 F.3d 961, 964 (D.C. Cir. 1995).  Accordingly, count nine of the complaint will be dismissed.


## III.    SUPPLEMENTAL JURISDICTION

"When the federal law claims on which a court's jurisdiction is based have been dismissed, the court has discretion in deciding whether to exercise supplemental jurisdiction over the remaining state law claims."  Terrell v. Dist. of Columbia, 703 F. Supp. 2d 17, 23 (D.D.C. 2010).  However, the Court bears in mind that once all federal law claims have been dismissed prior to trial, factors such as "judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." Shekoyan v. Sibley Int'l, 409 F.3d 414, 424 (D.C. Cir. 2005) (internal quotations omitted); see also Holland v. Freeman United Coal Mining Co., 574 F. Supp. 2d 116, 135-36 (D.D.C. 2008) (concluding "that

the balance of factors favors declining jurisdiction of the state law agency claim). Here, English alleges only two counts of federal law claims, which have been dismissed by the Court; the remaining claims -- breach of fiduciary duty, violation of the trust or bailment relationship, violation of the DCAPA, violation of DC debtor laws, intentional infliction of emotional distress, and conversion, are all claims governed by District of Columbia law. These claims would require the Court to consider and resolve questions of DC law -- a task that this Court concludes is best left to the District of Columbia courts absent any federal claims.[15]

Additionally, it is not even certain whether this Court could exercise supplemental jurisdiction over the DCAPA claim. See Lightfoot, 448 F.3d at 399 (stating that "DCAPA's judicial review provision placed exclusive jurisdiction in the D.C. Court of Appeals to review District agency action"); see also Fair Care Found. v. Dist. of Columbia Dep't of Ins. & Sec. Reg., 716 A.2d 987, 997 (D.C. 1998) (stating that "one of the key purposes of [DCAPA] was to reform and systemize the channels of judicial review of administrative actions."). Although the Lightfoot court nevertheless remanded to the district court to "reconsider" its exercise of supplemental jurisdiction, it strongly suggested that the district court should decline to do so.[16]

At the very least, these concerns must be factored into the Court's determination that considerations of judicial economy and convenience would not be served by retaining

---

[15] Because the Court finds that dismissal of the case on all counts is warranted, the Court also declines to consider the various service of process challenges raised with respect to the individual defendants.

[16] On remand in Lightfoot, Judge Kollar-Kotelly, in considering whether or not to exercise jurisdiction over the DCAPA claim, explained that the court would decline to do so, "[n]otwithstanding the fact that viable federal claims remain in this suit." Lightfoot v. Dist. of Columbia, 2007 WL 148777, at * 12 (D.D.C. Jan. 16, 2007).

jurisdiction over the state law claims, and English has not provided the Court with any compelling reason for the Court to consider such claims. Because the Court has concluded that English's federal law claims should be dismissed, it declines to exercise supplemental jurisdiction over English's state law claims.

## CONCLUSION

For the reasons stated above, the Court dismisses Counts one (1) and nine (9) for failing to state a claim, and declines to exercise supplemental jurisdiction over the remaining counts. Accordingly, English's complaint is dismissed in its entirety. A separate order accompanies this memorandum opinion.

**SO ORDERED**.

           /s/ John D. Bates        
               JOHN D. BATES
          United States District Judge

Dated: September 30, 2011